1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PHOUK KEOKHAM,

11             Plaintiff,                      No. CIV S-07-0426 EFB

12        vs.

13   MICHAEL J. ASTRUE,                      ORDER
     Commissioner of Social Security,
14
              Defendant.
15   _____/

16        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying plaintiff's application for Supplemental Security Income and

18   Disability Insurance Benefits under Title XVI and Title II, respectively, of the Social Security

19   Act ("Act").  For the reasons that follow, plaintiff's motion for summary judgment is denied, and

20   the Commissioner's cross-motion for summary judgment is granted.  The Clerk is directed to

21   enter judgment for the Commissioner.

22   **I.  BACKGROUND**

23        Plaintiff, born November 10, 1954, applied for disability insurance benefits and

24   supplemental security income on December 18, 2000, alleging disability since July 12, 2000, due

25   to lower back and knee injuries.  Administrative Record ("AR") 65, 98-99, 302.  In a decision

26   dated June 25, 2002, administrative law judge ("ALJ") Daniel G. Heely found that plaintiff had

severe impairments including depression, hypertension, diabetes mellitus, and obesity, but that she was not disabled.[1]  AR 315-22.  Plaintiff sought review before the Appeals Council and on September 24, 2003, the Appeals Council vacated the decision and remanded the claim for further consideration of medical opinions in the record and plaintiff's residual functional capacity, and to obtain evidence from a medical expert regarding the severity of plaintiff's impairments.  The Appeals Council also ordered the ALJ to obtain evidence from a vocational expert to clarify the effect of plaintiff's limitations on her occupational base.  AR 330-32.

A new hearing was held before the same ALJ on June 23, 2004.  He issued a new decision September 20, 2004, again finding that plaintiff was not disabled.  AR 420-28.  The

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401, *et seq*.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382, *et seq*.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

1  Appeals Council vacated that decision and remanded the claim to a different ALJ.  AR 430-31.

2  The new ALJ was directed to evaluate plaintiff's mental impairment in accordance with the

3  special technique set forth in 20 C.F.R. § 404.1520a.  *Id.*  The remand order also directed the

4  ALJ to give further consideration to plaintiff's maximum residual functional capacity in light of

5  examining source opinions in the record, and if needed, to obtain supplemental evidence from a

6  vocational expert.  AR 431.

7          A third hearing was held on March 7, 2006, before ALJ William C. Thompson, Jr.

8  Plaintiff appeared with an attorney, and a vocational expert testified.  AR 538-61.  In a decision

9  dated August 10, 2006, the ALJ found that plaintiff was not disabled.  AR 19-29.

10         Specifically, the ALJ made the following findings:

11         1.   The claimant filed applications for a period of disability
               and disability insurance benefits on December 18, 2000,
12             alleging disability beginning on July 12, 2000.

13         2.   The claimant is 51 years old.  She has a minimal
               educational background and past work as an electronics
14             assembler and receiving clerk.

15         3.   The claimant met the special earnings requirements for
               benefits based on disability under Title II of the Social
16             Security Act at the time of her alleged "disability" onset
               and continued to meet those requirements through at least
17             December 31, 2005.

18         4.   The claimant has not engaged in substantial gainful activity
               since July 12, 2000.
19
20         5.   The claimant has the following medically determinable
               impairments: diabetes, obesity and depression.  The
21             claimant's medically determinable impairments
               significantly limit her ability to perform basic work
               activities.
22
23         6.   It has not been established that the claimant has any
               impairment or impairments that meet or equal the criteria
24             set forth in any applicable section of the Listing of
               Impairments found at 20 CFR, Part 404, Subpart P,
               Appendix I.
25
26         7.   The claimant has the residual functional capacity to
               perform a wide range of light work, with the ability to sit 6

3

hours out of an 8 hour day, stand 6 hours out of an 8 hour day, and walk 6 hours out of an 8 hour day.  She can bend and stoop on an occasional basis.

8.      The claimant is capable of performing her past relevant work as an electronics assembler.

9.      The claimant's subjective statements regarding pain and other symptoms have been carefully considered, but to the extent that those statements constitute an allegation that the claimant has been precluded from engaging in all substantial gainful activity by a medically determinable impairment or impairments for a period of time which has lasted or can reasonably be expected to last for 12 continuous months, they are not found credible in light of the medical evidence and the claimant's statements and conduct, as discussed more fully in my decision.

10.     The claimant was not under a "disability" within the meaning of the Social Security Act, as amended, at any time on or before the date of this decision.

AR 19-29.

On January 11, 2007, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.  AR 8-10.

## II.  ISSUES PRESENTED

In her motion for summary judgment, plaintiff presents three issues.  First, plaintiff alleges that the ALJ failed to include plaintiff's mental limitations in his assessment of her residual functional capacity ("RFC").  More specifically, she argues that the ALJ's finding of a severe mental impairment is inconsistent with his finding that she had no more than mild mental limitations.  Second, plaintiff argues that the ALJ failed to consider plaintiff's inability to afford medications in connection with her failure to control her diabetes.  Finally, plaintiff asserts that the ALJ erred in discrediting the 2004 opinion of her treating physician, Dr. Xiaolu Sun, M.D.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

1   *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

2   180 F.3d 1094, 1097 (9th Cir. 1999).

3        The findings of the Commissioner as to any fact, if supported by substantial evidence,

4   are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

5   more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521

6   (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to

7   support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

8   *Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

9        "The ALJ is responsible for determining credibility, resolving conflicts in medical

10  testimony, and resolving ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)

11  (citations omitted).  "Where the evidence is susceptible to more than one rational

12  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

13  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

14  **IV.  ANALYSIS**

15       A.  <u>Assessment of Plaintiff's Mental Limitations</u>

16       Plaintiff asserts that the ALJ improperly found that she had only mild limitations with

17  respect to her depression.  Plaintiff argues that this finding is inconsistent with the step-two

18  determination that her depression was "severe."

19       "The step-two inquiry is a de minimis screening device to dispose of groundless claims."

20  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  The purpose is to identify claimants

21  whose medical impairment is so slight that it is unlikely they would be disabled even if age,

22  education, and experience were taken into account.  *Bowen*, 482 U.S. at 153.  At step two of the

23  sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe"

24  within the meaning of 20 C.F.R. § 404.1520(c).  "An impairment is not severe if it is merely 'a

25  slight abnormality (or combination of slight abnormalities) that has no more than a minimal

26  effect on the ability to do basic work activities.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir.

2005) (quoting Social Security Ruling ("SSR") 96-3p (1996)).

If a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. § 404.1523. The ALJ "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone [i]s sufficiently severe." *Smolen*, 80 F.3d at 1290; 20 C.F.R. § 404.1523.

Here, the ALJ found that plaintiff's diabetes, obesity and depression were "severe" impairments within the meaning of the regulations. AR 29. Pursuant to 20 C.F.R. § 404.1520a, the ALJ was required to use a "special technique" for assessing the severity of plaintiff's mental impairment (i.e., depression). Plaintiff does not argue that he failed to employ the technique, but that his findings are internally inconsistent.

Pursuant to the analytical procedure prescribed by the regulations, after the Commissioner determines that the claimant has a medically determinable mental impairment, he then rates the degree of the claimant's functional limitations in four areas, known as the "B Criteria": (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and, (4) episodes of decompensation. 20 C.F.R. § 1520a(b)-(c); *see also* Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders. In the first three areas, the Commissioner rates the limitations as either none, mild, moderate, marked, or extreme. The fourth functional area, episodes of decompensation, is rated on a four point scale of none, one or two, three, and four or more. 20 C.F.R. 404.1250a(c)(3) and (4)).

These ratings allow the Commissioner to determine the severity of the claimant's impairment(s) at steps two and three of the sequential evaluation. 20 C.F.R. § 1520a(d); *see also* SSR 96-8p. The residual functional capacity determination is a separate determination, made in order to assess the claimant's ability to perform the functions of her past work (step four), or if she cannot do her past work, other work (step five). Thus, the ALJ's findings at step two and three – here, that plaintiff had only "mild restrictions of activities of daily living, mild difficulties

6

1   in maintaining social functioning and mild difficulties in maintaining concentration, persistence

2   and pace" (AR 22) – were not limitations that had to be included in the ultimate RFC

3   assessment. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("The step two and step

4   five determinations require different levels of severity of limitations such that the satisfaction of

5   the requirements at step two does not automatically lead to the conclusion that the claimant has

6   satisfied the requirements at step five.").[2]

7         Plaintiff, however, argues that the purported inconsistency between the ALJ's finding

8   that plaintiff had a severe mental impairment and his finding of only "mild" limitations requires

9   remand.[3]  *See* Pltf's Mtn., 11:25-26.  Specifically, plaintiff cites section 404.1520a(d)(1), which

10   provides that, where a claimant has a rating of "none" or "mild" in the first three functional

11   areas, the Commissioner "will generally conclude that [the claimant's] impairment(s) is not

12   severe, unless the evidence otherwise indicates that there is more than a minimal limitation in

13   [the claimant's] ability to do basic work activities."  20 C.F.R. § 404.1520a(d)(1).  In her brief,

14   plaintiff fails to cite the latter half of this regulation, which highlights that "mild" ratings in those

15   three areas do not militate a finding of "non-severe."  Indeed, the regulations direct the

16   Commissioner to make a determination based on the evidence in each case.

17         Here, although the ALJ found that plaintiff had only mild limitations in the first three

18   functional areas, he ultimately concluded that plaintiff's depression met the threshold "severity"

19

---

20       [2]  The Ninth Circuit's reasoning in *Hoopai* is instructive. It involved severe impairments

21   of depression and back pain.  Plaintiff argued that since the depression was found to be severe at
     step two, it must automatically be a significant non-exertional limitation at step five such that

22   vocational testimony was required. *Id.*, at 1076.  The court rejected this argument, reasoning that
     if the step five and step two did not require separate severity determinations, they would

23   otherwise collapse into a single step and "a vocational expert would be required in every case in
     which a step-two determination of severity is made."  *Id.* at 1076 (citing *Heckler v. Campbell*,

24   461 U.S. 458, 461 (1983)).

25       [3]  Plaintiff's counsel argues that "[b]y finding that Ms. Jones [*sic*] suffered from a severe
     mental impairment, the ALJ admitted that Ms. Keokham had more than mild limitations in at

26   least one major area."  Plaintiff's Memorandum of Law in Support of Motion For Summary
     Judgment ("Pltf's Mtn."), 10:23-25.

1   requirement for purposes of step two.  There was no error in that.

2        Indeed, the record contains conflicting evidence regarding the degree of impairment

3   imposed by plaintiff's depression.  Although an examining consultative psychiatrist, Dr. (Helen)

4   Patricia White, M.D., opined in March 2002 that plaintiff had major depression and was

5   precluded from all substantial gainful activity (AR 289-96), another examining psychiatrist, Dr.

6   Bradley Daigle, M.D., opined in January 2004, that plaintiff had only slight to moderate

7   functional limitations and a GAF score of 65.[4]  AR 399-404.  The ALJ gave "controlling weight"

8   to Dr. Daigle's opinion, finding it consistent with plaintiff's minimal mental health treatment,

9   her non-compliance with prescribed medications, and her "substantial" activities of daily living.

10  AR 27.  Specifically, the ALJ noted that plaintiff was able to pay her bills, handle her own

11  money, perform household chores, shop, cook, care for her grandchildren, attend temple,

12  socialize with friends regularly, and get along well with family and neighbors.  AR 22, 290-91,

13  401.  The ALJ also noted that plaintiff failed to take her anti-depressants as prescribed, either

14  failing to pick them up, discontinuing them of her own volition, or failing to report their

15  ineffectiveness during an alleged two-year period.  AR 23-24, 455, 458-59, 464, 469.

16       Although plaintiff argues that the ALJ erred by declining to include in the RFC

17  assessment a particular limitation expressed in Dr. Daigle's opinion, – namely that plaintiff

18  would have moderate difficulty adapting to normal workplaces stresses (AR 404) – she fails to

19  explain how this single limitation, even if credited, would significantly impair her ability to

20  perform her past relevant work.  *See Bowen*, 482 U.S. at 146 n.5 (plaintiff bears burden at steps

21  one through four of the sequential evaluation).  Moreover, the determination of a claimant's RFC

22

23       [4] Global Assessment of Functioning ("GAF") is a scale reflecting the "psychological,
24  social, and occupational functioning on a hypothetical continuum of mental health-illness."
    American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, 34
25  (4th ed., Text Revision, 2000) ("DSM IV-TR").  A GAF rating of 61-70 indicates "some mild
    symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational,
26  or school functioning (e.g., occasional truancy, or theft within the household), but generally
    functioning pretty well, has some meaningful interpersonal relationships."  *Id.*

1   is wholly within the province of the ALJ.  *See* SSR 96-8p.  It is based on all the evidence in the

2   record, and it is the ALJ's duty to consider and weigh that evidence.  *See id.*  Here, the ALJ

3   considered the divergent opinions in the record, together with evidence of plaintiff's daily

4   activities, minimal mental health treatment and non-compliance with medication, as well as her

5   lack of credibility regarding her subjective symptoms, and declined to include any mental

6   limitations in the ultimate assessment of her RFC.  In this respect, the ALJ's RFC largely reflects

7   Dr. Daigle's opinion, as it includes no significant functional limitations imposed by plaintiff's

8   depression.  Even plaintiff's treating physician, Dr. Sun, whose opinion the ALJ gave "reduced

9   weight" (AR 25), opined that plaintiff had "good" ability to follow work rules, relate to co-

10  workers, deal with the public, use judgment, interact with supervisors, function independently

11  and maintain attention and concentration.  AR 409-13.

12          Here, the ultimate RFC assessment was supported by  substantial evidence in the record,

13  as discussed above, and reflects an appropriate resolution of any ambiguities.  There was no

14  error in the ALJ's consideration of plaintiff's mental impairment or any limitations resulting

15  therefrom.

16          B.  Plaintiff's Non-Compliance with Diabetes Treatment

17          Next, plaintiff asserts that the ALJ penalized plaintiff for failing to comply with her

18  prescribed diabetes medications without examining the reasons for her non-compliance,

19  particularly, her alleged inability to afford them.

20          A condition which can be controlled or corrected by medication is not disabling.  *Montijo*

21  *v. Secretary of HHS*, 729 F.2d 599, 600 (9th Cir. 1984) (Addison's Disease controlled with

22  medications deemed not disabling); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (rib

23  condition controlled with antibiotics not considered disabling).  However, "a disabled claimant

24  cannot be denied benefits for failing to obtain medical treatment that would ameliorate his

25  condition if he cannot afford that treatment."  *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir.

26  1995).

1    Here, the ALJ examined the lengthy record and concluded that plaintiff's diabetes

2    appeared "to be exacerbated solely due to [her] non-compliance" with her prescribed treatment.

3    AR 22.  While the record reveals that plaintiff "did well" when she was compliant with her

4    medications (AR 374-76), the ALJ noted numerous indications of non-compliance.

5    He remarked that progress notes from February 2001 indicated that plaintiff's diabetes

6    was uncontrolled and that she was not doing testing at home.  AR 180, 183.  In May 2001, Dr.

7    Sun's notes again revealed that plaintiff's diabetes was uncontrolled (AR 111), and in July 2001,

8    they showed that plaintiff had lost her glucose monitor and was not monitoring her glucose

9    levels.  AR 173.  On July 27, 2001, progress notes indicated that she was non-compliant with her

10   diabetes medications because they were making her sick.  AR 169.  In November 2001, plaintiff

11   reported that she had "self" discontinued her diabetes medication "because of back pain."  AR

12   166.

13   In December 2002, plaintiff gave numerous reasons for her failure to take her diabetes

14   medication, including "back pain."  AR 379.  She also told Dr. Sun she did not "care about [her]

15   diabetes . . . . [or her] diet."  *Id*.  During a visit in 2003, Dr. Sun's notes indicate his frustration,

16   not just with plaintiff's failure to comply with her medication, but also to follow an appropriate

17   diet.  AR 378.  In March 2003, Dr. Sun noted that plaintiff had run out of medication, but she did

18   not cite financial reasons for her failure to get a refill.  AR 367.  In September 2005, plaintiff

19   indicated that she had taken it upon herself to try alternative medicine for her diabetes.  AR 458.

20   In March 2004, Dr. Sun again noted that plaintiff was not taking her medication, but this

21   time noted that plaintiff indicated it was due to cost.  AR 414-15.  However, during a check-up

22   in February 2005, Dr. Sun noted that plaintiff was noncompliant with her medication, and that

23   her last refill was in April 2004, one month after her reported inability to pay for medication.

24   AR 469.  The record does, however, show that plaintiff cited inability to pay on a few other

25   occasions as the reason for her continued non-compliance.  AR 463, 468.  Dr. Sun noted a

26   follow-up telephone call to plaintiff on February 14, 2005, in which he asked about her failure to

10

1    pick up her diabetes medications on February 9, 2005.  She indicated that she did not have the

2    money, but nonetheless told him she would pick it up the next day.  AR 468.  A similar call

3    occurred on May 20, 2005.  AR 466.

4         Although there is some indication that plaintiff had trouble paying for her medications in

5    2004 and 2005, it appears that she still managed to get her medications eventually.  The ALJ

6    specifically noted plaintiff's purported inability to pay, and did not fail to examine this alleged

7    reason for her non-compliance, as plaintiff contends.  Rather, he noted the many examples of

8    non-compliance over a several-year period, only a few which plaintiff attributed to an inability to

9    afford medications.  Indeed, during the hearing, plaintiff did not mention an inability to pay for

10   medicine.  Rather, she testified that she received treatment for her diabetes at Kaiser and took her

11   medication, but that it just "cannot be controlled."  AR 543-44.  Significantly, the ALJ made a

12   well-supported adverse credibility determination, which plaintiff has not challenged here.

13        Finally, plaintiff provides no documentation of any attempts to receive free or low cost

14   medical assistance during the times in which she claims she could not afford medication.  *See*

15   Social Security Ruling ("SSR") 82-59 (noting that clinics, charitable and public assistance

16   agencies, must be explored).  Her alleged inability to pay for diabetes treatment is documented

17   on only a few occasions, and those occasions are not representative of treatment notes covering a

18   span of several years.  Nonetheless, the ALJ did consider this evidence in concluding that

19   plaintiff's non-compliance with diabetes treatment – including her failure to follow a proper diet

20   – was what exacerbated her symptoms.  Plaintiff provided no reasons for failing to follow a

21   proper diet, and instead indicated to her doctor her disinterest in controlling her diabetes in this

22   way.  The ALJ's analysis regarding plaintiff's non-compliance with her prescribed diabetes

23   treatment is supported by substantial evidence in the record, including his adverse credibility

24   determination.  Indeed, the record shows that plaintiff's non-compliance was not due solely, if at

25   all, to a purported inability to afford medication.

26   ////

C.  <u>Treating Physician's Opinion</u>

Finally, plaintiff argues that the ALJ failed to articulate specific and legitimate reasons for discrediting the 2004 opinion of plaintiff's treating physician, Dr. Sun.

The weight given to medical opinions depends, in part, on whether they are proffered by treating, examining, or non-examining professionals.  *Lester*, 81 F.3d at 830.  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  By contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  *Id*., at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews*, 53 F.3d at 1041 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Here, the ALJ did not wholly reject Dr. Sun's 2004 opinion as plaintiff suggests.  Rather, he gave the opinion "reduced weight," noting discrepancies between the 2004 and 2001 opinions, and finding both to be unsupported by the medical evidence.  AR 25.  Indeed, in the May 2001 opinion, Dr. Sun indicated that plaintiff could stand and walk for no more than two hours per day, and required a sit/stand option.  AR 122-23.  He further opined that plaintiff could *never* climb, balance, stoop, kneel, crouch or crawl, and had limited ability to reach with her upper extremities.  *Id*. (emphasis added).  Dr. Sun cited no objective medical findings to support these conclusions, and described the prognosis as "diabetes, osteoarthritis, lower back pain, knee

12

pain, sciatica." AR 123.

While the 2004 opinion was rendered after treating plaintiff for several years, it was similarly unsupported.  AR 409-413.  Dr. Sun opined that plaintiff could occasionally lift and carry ten pounds, could sit and stand for three to four hours in a workday, and could walk for two hours total.  AR 410.  He found that plaintiff could occasionally stoop, kneel, crouch, crawl, and reach, and that she could frequently balance.  AR 411.  He cited no objective medical findings to support this opinion.  Significantly, he also failed to explain why it differed so dramatically from his 2001 opinion, and his treatment notes provide little illumination in this regard.

Dr. Sun's 2004 opinion was contradicted by the December 2003, opinion of examining physician, Dr. Satish Sharma, M.D.  AR 392- 96.  In particular, after a comprehensive examination, including strength and reflex tests, Dr. Sharma found that plaintiff was capable of performing a significant range of light work.  AR 396.  In light of this opinion, and other similar, state agency opinions in the record, the ALJ was required only to give specific and legitimate reasons for assigning Dr. Sun's 2004 opinion less weight.  He did so, noting that Dr. Sun's opinion contained no objective support whatsoever, neither for his ultimate conclusions, nor for their marked contrast with the 2001 opinion.  To the extent Dr. Sun's opinion was based on plaintiff's subjective complaints (which is far from clear given the lack of explanation for his findings),  the ALJ was free to disregard it in light of the plaintiff's lack of credibility.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (free to disregard opinion premised on subjective complaints where plaintiff is not credible).

**V.  CONCLUSION**

In conclusion, the court finds that the ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.

////

////

13

Therefore, IT IS ORDERED that:

1.  Plaintiff's motion for summary judgment is denied;

2.  The Commissioner's cross-motion for summary judgment is granted; and,

3.  The Clerk is directed to enter judgment in the Commissioner's favor.

DATED:  September 9, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE